UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID L. HOLLAND,

    Petitioner,

v.

HEIDI LACKNER,

    Respondent.

Case No. 13-cv-02094-JD

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The Court ordered respondent to show cause why the writ should not be granted. Respondent filed an answer and a memorandum of points and authorities in support of it, and lodged exhibits with the Court. Petitioner filed a traverse. The petition is denied.

## BACKGROUND

A jury found petitioner guilty of oral copulation by force committed during a burglary. *People v. Holland*, No. H034963, 2011 WL 4062376, at *1 (Cal. Ct. App. Sept. 14, 2011). It was also found that the victim was 65 years of age or older, and that petitioner had a prior strike conviction and a prior serious felony conviction. *Id*. Petitioner was sentenced to 25 years to life in prison. *Id*. The California Court of Appeal affirmed the judgment on appeal in a reasoned opinion. *Id*. The California Supreme Court denied a petition for review. Resp. Exs. H, I.

In 2007, petitioner voluntarily provided a DNA sample to help with the investigation of his brother who was a suspect in an unrelated rape and murder. Reporter's Transcript ("RT") at 6-11. When petitioner provided the DNA sample, police were unaware that petitioner might have been involved in a 2001 rape and were not investigating petitioner for any crime. RT at 9-10, 33, 48. There was a match between petitioner's DNA and a sample from the 2001 unsolved sexual assault

1  of Gweneth Doe.  RT at 544-45.

2       In October 2001, Gweneth Doe was 81 years old and lived independently in San Jose.  RT at 392, 395, 417.  In the spring of 2001, Gweneth had fence work done at her house.  RT at 411.  Her daughter, Lauren, visited her frequently.  Lauren described Gweneth as normally a "talkative, cheerful kind of person."  RT at 396.  On October 11, 2001, Lauren received a voicemail from Gweneth who stated she was calling from a neighbor's house because her phones had been stolen.  RT at 394.  On October 12, 2001, Lauren went to her mother's house.  RT at 395.  Lauren detected a sense of nervousness in her mother's demeanor and thought she was in a stressful state and having a difficult time coping with something.  RT at 397-99, 437.

       When queried, Gweneth stated that her phones had been stolen.  RT at 401.  When Lauren asked if Gweneth was there when the phones were stolen, Gweneth replied, "Well, it was kind of a rape situation."  RT at 402.  Gweneth stated that she had woken up in her bedroom in the middle of the night with a man on top of her.  *Id*.  She stated she was threatened with being killed, but had not been beaten.  RT at 402-03.  She had been wearing a nightgown and that "the man had told her to have oral sex with him and . . . she had to do that."  RT at 403.  The man then told her to take a shower with her nightgown on.  *Id*.  When she was showering, the man had made some phone calls from the front room and told her not to come into the room.  RT at 405.  The incident occurred on October 10, 2001, between 4:30 and 6:30 in the morning.  RT at 406.  Gweneth could not identify the man.  *Id*.  Gweneth had not called the police.  RT at 402.  Lauren called 9-1-1 and reported what had happened.  *Id*.  Lauren's conversation with Gweneth occurred before the police arrived.  RT at 404, 450-51.  Before police arrived, Gweneth did not talk to Lauren about the vaginal sex.  RT at 462.  In 2004, Gweneth died.  RT at 440.  In 2007, police contacted Lauren and told her there was a suspect.  RT at 440-41.

       On November 16, 2007, petitioner was interviewed by police in a recorded interview.  RT at 679; Clerk's Transcript ("CT") at 410.  In 2001, he was 39 years of age.  CT at 412.  At first petitioner said he had no idea how his DNA ended up on the victim's underwear.  CT at 422-23.  He then stated that there was no rape, rather it was consensual.  CT at 423.  He stated there were problems with his relationship with his wife and Gweneth was comforting him.  CT 423-24.  He

2

met her while installing a fence for her. CT at 424. He stated that they were good friends and that night had been weird, that Gweneth did not want him to go, that she was clingy and there was "no actual sex." CT at 426. He stated he was drunk and she never said no and that she tried to perform oral sex, but it didn't happen. CT at 428-29. He stated they were both embarrassed about the whole situation and that she told him she felt dirty, and then she took a shower fully dressed. CT at 423, 426. He stated she did not want him to leave, but he left anyway. CT at 426, 429. He stated he saw her a few times shortly after that night and that she had nodded and waved to him a few times. CT at 430-31.

A prison inmate, who had several convictions for fraud and other offenses, testified about statements petitioner made while they shared a cell in November 2007. RT at 464-66, 475. The inmate said that petitioner admitted that he had known the victim kept a key under her mat and that he entered her house one morning when he was high on drugs. RT at 471, 473. He had thought she was out of town but he found her there, got into bed with her and made her perform oral sex on him. RT at 471. He threatened to kill her if she said anything and also stole some phones. RT at 474, 493. The prison inmate also recounted that petitioner stated he called a phone sex line and masturbated in a basket of laundry and wiped himself off with some underwear. RT at 472. A local newspaper article written in November 2007 stated that petitioner was charged with rape and forced oral copulation and mentioned phone sex, but it did not describe the masturbation or the victim's underwear. RT at 700-01. The inmate did not receive any benefit for his testimony, though he did think there would be some benefit when he contacted law enforcement. RT at 466-69, 474.

Petitioner's trial counsel and the prosecution agreed to the following stipulations to be read to the jury:
> . . . . on October 12, 2001, Gweneth Doe was five feet, three inches tall and weighed 125 pounds. . . . .
> . . . . defendant has a date of birth of December 19, 1961. He is six feet, two inches tall, weighed approximately 220 pounds in the fall of 2001. . . . . . . .
> . . . . on October 12, 2001, a blood sample was taken from Gweneth Doe at Valley Medical Center in San Jose. That blood sample is the one on which the Santa Clara County Crime Laboratory conducted forensic DNA analysis . . . .
> . . . . Gweneth Doe was examined on October 12, 2001, by a

3

> qualified nurse who observed no visible injuries to her mouth, vagina or any other parts of her body.
> If called to testify that nurse would state that the absence of a sexual injury alone does not necessarily mean that a person was not raped or compelled to orally copulate another. Findings may vary from patient to patient. Lack of sexual injuries includes a lack of bruising, cuts, bleeding, swelling, abrasions, lacerations or redness.

RT at 544-45.

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence

presented in the state-court proceeding." *See Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000). Moreover, in conducting its analysis, the federal court must presume the correctness of the state court's factual findings, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The state court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Nunnemaker* at 801-06; *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).

## DISCUSSION

As grounds for federal habeas relief, petitioner asserts that: (1) the trial court erroneously admitted hearsay statements of the deceased victim in violation of the Confrontation Clause and his right to due process; and (2) the trial court erroneously admitted hearsay statements by forensic analysts in violation of the Confrontation Clause and his right to due process.[1]

### I. VICTIM'S STATEMENT

Petitioner argues that his right to confrontation was violated when the trial court erroneously permitted the victim's daughter to testify regarding the victim's statements concerning the incident. He also argues that his due process rights were violated by the admission of this evidence.

**Confrontation Clause**

**Legal Standard**

The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right to "be confronted with the witnesses against him." U.S. Const. Amend. VI. The ultimate goal of the Confrontation Clause is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. *Crawford v. Washington*, 541 U.S. 36, 61 (2004).

---

[1] A Fourth Amendment claim regarding his DNA sample was previously dismissed pursuant to *Stone v. Powell*, 428 U.S. 465, 481-82, 494 (1976), which bars federal habeas review of Fourth Amendment claims unless the state did not provide an opportunity for full and fair litigation of those claims.

5

The Confrontation Clause applies to all "testimonial" statements. *See Crawford*, 541 U.S. at 50-51. "Testimony . . . is typically [a ]solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* at 51 (alteration in original) (internal quotation marks omitted); *see id.* ("An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."). The Confrontation Clause applies not only to in-court testimony but also to out-of-court statements introduced at trial, regardless of the admissibility of the statements under state laws of evidence. *Crawford*, 541 U.S. at 50-51.

When the primary purpose of taking an out-of-court statement is to create an out-of-court substitute for trial testimony, the statement is testimonial hearsay and *Crawford* applies. *Michigan v. Bryant*, 131 S. Ct. 1143, 1155 (2011). *See*, *e.g.*, *Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2712-14 (2011) (concluding that forensic lab report, prepared in connection with a criminal investigation, certifying that petitioner's blood alcohol level was above limit for aggravated DWI was testimonial). When that was not the primary purpose, "the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause." *Bryant*, 131 S. Ct. at 1155. In determining the primary purpose of the statement, "standard rules of hearsay" will be relevant. *Id.* And the formality of the interrogation, or the lack of it, may inform the court's inquiry as to its "primary purpose." *Id.* at 1160. The primary purpose of a statement is determined objectively. *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1267 (9th Cir. 2013). Thus, "'the relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred.'" *Id.* (quoting *Bryant*, 131 S. Ct. at 1156).

**Discussion**

The California Court of Appeal discussed the relevant federal authority and denied this claim:

> Obviously, the initial statements of Gweneth to her daughter Lauren were not products of an interrogation by a police officer or a 911 operator and there was no evidence that Lauren was acting as an agent for law enforcement. Even assuming without deciding that a

6

> victim's statements made in response to a family member's questions or volunteered to a family member might be testimonial under certain circumstances, FN8 the record does not show that the "primary purpose" of Gweneth's disclosures was to create a record for prosecution or a substitute for testimony. It is evident that the "primary purpose" of Lauren's inquiries was to uncover what had happened to her mother and to help her. There was no evidence that Gweneth confided in her daughter for the "primary purpose" of making "'[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact [ ]' . . ." (*Crawford*, *supra*, 541 U.S. at p. 51) or for the "primary purpose" of providing "an out-of-court substitute for trial testimony." (*Michigan v. Bryant*, *supra*, 131 S.Ct. at p. 1155; *cf. People v. Griffin* (2004) 33 Cal.4th 536, 580, fn. 19 [accusatory statement by victim to friend at school was not testimonial for purposes of right to confrontation].)
> > FN8. For example, we can conceive of a situation where a family member is merely acting as an intermediary and is asking questions on behalf of law enforcement and relating information directly from a victim to law enforcement or a situation where a victim is having a family member record her statements for purposes of creating a record for later use at trial.
>
> The circumstances of Gweneth's initial statements to Lauren, viewed objectively, lead us to conclude that they were not testimonial. Accordingly, their admission was not violative of the Sixth Amendment's right to confrontation as interpreted by *Crawford* and its progeny.

*Holland*, 2011 WL 4062376, at *8.

Petitioner has failed to show that the state court decision was an unreasonable application of Supreme Court authority. There is no Supreme Court authority that establishes when statements made to someone other than law enforcement personnel are testimonial. In *Davis v. Washington*, 547 U.S. 813 (2006), the Supreme Court specifically declined to consider this issue. *Id*. at 823 fn. 2. The Court similarly declined to address the issue of statements to non-law enforcement personnel in *Michigan v. Bryant*, 131 S. Ct. at 1155, n.3. In *Giles v. California*, 554 U.S. 353 (2008), the Court stated in dicta that, "[s]tatements to friends and neighbors about abuse and intimidation and statements to physicians in the course of receiving treatment would be excluded, if at all, only by hearsay rules . . . ." *Id*. at 376. Many circuit courts have also found that statements to friends and family members are non-testimonial pursuant to *Crawford*. *See United States v. Lopez*, 649 F.3d 1222, 1238 (11th Cir. 2011) ("bragging to a friend" is not testimonial); *United States v. Boyd*, 640 F.3d 657, 665 (6th Cir. 2011) ("statements made to friends and acquaintances are non-testimonial"); *United States v. Smalls*, 605 F.3d 765, 780 (10th

7

Cir. 2010) (statement to "apparent friend" was "undoubtedly nontestimonial under any legitimate view of the law"); *United States v. Manfre*, 368 F.3d 832, 838 n.1 (8th Cir. 2004) ("Mr. Rush's comments were made to loved ones or acquaintances and are not the kind of memorialized, judicial-process-created evidence of which *Crawford* speaks").

Assuming that statements to non-law enforcement individuals could be testimonial under certain circumstances, the discussion between the victim and her daughter in this case about the sexual assault was non-testimonial for purposes of the Confrontation Clause. The victim's statements to her daughter were not for the purpose to create a record for prosecution or to act as a substitute for testimony nor were they a declaration made for the purpose to establish or prove a fact. It is clear from the record that the victim's statements were to answer the questions from her daughter about why she was behaving uncharacteristically and appeared in distress and why her phones were missing.[2] The state court found that looking to the circumstances of the individuals during the discussion, the statements were non-testimonial. In reaching this conclusion, the state court decision did not unreasonably apply Supreme Court authority.

**Due Process**

Petitioner also argues that the trial court erred by admitting the statements under state hearsay rules which violated due process and denied him a fair trial.

**Legal Standard**

A state court's evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process. *See Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991). The Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (finding that trial court's admission of irrelevant pornographic materials was "fundamentally unfair" under Ninth Circuit

---

[2] The trial court excluded the victim's statements to a police officer and a sexual assault response nurse, finding that these statements were testimonial. *Holland*, 2011 WL 4062376, at *5.

1 precedent but not contrary to, or an unreasonable application of, clearly established Federal law
2 under § 2254(d)).

3       To obtain federal habeas relief based upon a state court's admission of evidence, a
4 petitioner must show that the admission of the evidence was so prejudicial that it rendered the trial
5 fundamentally unfair in violation of due process. *Estelle v. McGuire*, 502 U.S. 62, 70 (1991);
6 *Jammal*, 926 F.2d at 919. "A habeas petitioner bears a heavy burden in showing a due process
7 violation based on an evidentiary decision." *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir.
8 2005). The Supreme Court has "defined the category of infractions that violate 'fundamental
9 fairness' very narrowly." *Dowling v. United States*, 493 U.S. 342, 352 (1990). The Ninth Circuit
10 has noted that the admission of evidence violates due process only if "there are *no* permissible
11 inferences the jury may draw from the evidence." *Jammal*, at 920.

**Discussion**

The trial court admitted the statements as spontaneous utterances under California Evidence Code section 1240. The California Court of Appeal found that the trial court abused its discretion in admitting the statements as spontaneous utterances but evaluated the error under the harmless error standard of *People v. Watson*, 46 Cal. 2d 818, 836 (1956), and found no error as the evidence was properly admissible for nonhearsay purposes as a "fresh complaint." The state court held:

> We observe that the evidence of Gweneth's complaint was relevant and admissible for nonhearsay purposes. "[U]nder principles generally applicable to the determination of evidentiary relevance and admissibility, proof of an extrajudicial complaint, made by the victim of a sexual offense, disclosing the alleged assault, may be admissible for a limited, nonhearsay purpose-namely, to establish the fact of, and the circumstances surrounding, the victim's disclosure of the assault to others-whenever the fact that the disclosure was made and the circumstances under which it was made are relevant to the trier of fact's determination as to whether the offense occurred." (*People v. Brown* (1994) 8 Cal. 4th 746, 749-750, italics omitted; *see also* Evid. Code, §§ 210, 351.) "Of course, only the fact that a complaint was made, and the circumstances surrounding its making, ordinarily are admissible; admission of evidence concerning details of the statements themselves, to prove the truth of the matter asserted, would violate the hearsay rule. (4 Wigmore, op. cit. supra, § 1142, p. 318.)" (*Id*. at p. 760.)
> "In sexual as well as nonsexual offense cases, evidence of the fact and circumstances of a victim's complaint may be relevant for a variety of nonhearsay purposes, regardless whether the complaint is

9

prompt or delayed. To begin with, if such a victim did, in fact, make a complaint promptly after the alleged incident, the circumstances under which the complaint was made may aid the jury in determining whether the alleged offense occurred. Furthermore, admission of evidence that such a prompt complaint was made also will eliminate the risk that the jury, if not apprised of that fact, erroneously will infer that no such prompt complaint was made." (Id. at p. 761.)

Defendant is not disputing that evidence of the fact of and the circumstances surrounding Gweneth's complaint of forcible oral copulation was admissible for nonhearsay purposes. FN9 That evidence considered for nonhearsay purposes together with other incriminating evidence, stipulated facts, and reasonable inferences satisfy us that the erroneous admission of the victim's statements for their truth was harmless. It was stipulated that Gweneth was five feet, three inches tall and weighed 125 pounds on October 12, 2001. It was also stipulated that defendant was six foot, two inches tall and weighed 220 pounds in the fall of 2001 and he was born on December 19, 1961, which made him 39 years old in October 2001. As indicated, Gweneth was 81 years old at that time.

> FN9. "[T]he admissibility of such evidence does not turn invariably upon whether the victim's complaint was made immediately following the alleged assault or was preceded by some delay, nor upon whether the complaint was volunteered spontaneously by the victim or instead was prompted by some inquiry or questioning from another person. Rather, these factors simply are to be considered among the circumstances of the victim's report or disclosure that are relevant in assisting the trier of fact in assessing the significance of the victim's statements in conjunction with all of the other evidence presented." (*People v. Brown*, *supra*, 8 Cal.4th at p. 763.)

The evidence showed that Sergeant Paula McAllister with the Santa Clara County Sheriff's Office interviewed defendant in November 2007. When defendant was first confronted with information that his DNA had been found in the underwear of a much older woman named Gweneth, defendant at first could not recall her but, later in the same interview, he admitted that she tried to give him a "blow job" but it "wasn't happening" and claimed it was entirely consensual. FN10 He recalled that she walked into the shower fully dressed because she felt dirty. Defendant also confirmed that he worked for a week putting up a new fence for Gweneth. He recalled that she brought him lemonade. There was no evidence to suggest that defendant's incriminating admissions to the sergeant should not be believed.

> FN10. "Oral copulation is any contact, no matter how slight, between the mouth of one person and the sexual organ or anus of another person." (CALCRIM No. 1015 (2010 ed.) p. 819; see § 288a, subd. (a) ["Oral copulation" within the meaning of section 288a is "the act of copulating the mouth of one person with the sexual organ or anus of another person"].)

A cellmate with whom defendant had been briefly housed in jail recalled defendant saying that he had done fencing work for someone named Gweneth or Gwen and he had known there was a house key under the mat. Defendant had admitted that he had

10

>entered her home but he had not expected her to be there. According to the cellmate, defendant said that when he discovered her in the bedroom, he crawled into her bed and made Gweneth give him a "blow job." This statement was consistent with defendant's previous statement to the sergeant indicating there had been an act of oral copulation. Defendant disclosed to the cellmate that he had threatened to kill her if she said anything but reported that he had told Sergeant McAllister that the encounter was consensual. Defendant's statements to the cellmate supported an inference that his repeated assertions to the sergeant that the "blow job" was consensual were untruthful. In addition, defendant told the cellmate that he had used a telephone in her living room to have phone sex. Defendant said that he had masturbated, ejaculated, and wiped himself on panties that he grabbed from a basket of laundry.
>
>The fact that, during the sergeant's interrogation, defendant could not at first remember the decades-older Gweneth, for whom he had done fence work over the course of a week and who he admitted later in the interview had tried to give him a "blow job," casts doubt upon defendant's claim that the act of oral copulation was consensual. Defendant's admissions to his cellmate regarding forcible oral copulation and his use of Gweneth's phone during the incident and Lauren's testimony that she could not find any of her mother's telephones after the incident also undermine any assertions that sexual contact was consensual. Although Gweneth's statements were not admissible for their truth, the fact and circumstances of her complaint to her daughter that there had been "sort of a rape situation" involving oral sex not long after the alleged incident strengthened the evidence that a crime had occurred.
>
>We conclude that the error in admitting the victim's hearsay description of the incident under the spontaneous-statement exception to the hearsay rule was harmless because it is not "reasonably probable that a result more favorable to [defendant] would have been reached in the absence of the error." (*People v. Watson*, *supra*, 46 Cal.2d at p. 836.)

*Holland*, 2011 WL 4062376, at *11-13.

Petitioner has failed to meet his heavy burden in demonstrating that the admission of the evidence was so prejudicial that it rendered the trial fundamentally unfair. In his petition, petitioner only argues that the evidence was improperly admitted under state law and the "fresh complaint" exception. Whether or not the statements were improperly admitted is solely an issue of state law. *Estelle*, 502 U.S. at 67 (an inquiry into whether evidence was correctly admitted under California law "is no part of a federal court's habeas review of a state conviction"). Petitioner does not present arguments to support his claim that the admission of the evidence deprived him of a fundamentally fair trial.

On direct appeal petitioner conceded that the day, time, place, and circumstances when Gweneth first told her daughter about the incident were admissible under the "fresh complaint"

1 principle. Resp. Ex. C at 42-43.  Petitioner argued that the testimony regarding the details of the

2 offense were not admissible.  Thus, it was proper for statements to be admitted that set forth that

3 the victim stated she was sexually assaulted, just not the details.

4       The evidence that was improperly admitted was relative and probative of the issue of

5 consent because Gweneth's report of the sexual assault was contrary to petitioner's statement that

6 the encounter was consensual.  Only if there are no permissible inferences that the jury may draw

7 from the evidence can its admission violate due process.  *See Jammal*, 926 F.2d at 920.  Because

8 there were permissible references to be drawn from the evidence, the admission of the statements

9 did not render the trial fundamentally unfair.  *See e.g., Alcala v. Woodford*, 334 F.3d 862, 886-88

10 (9th Cir. 2003) (admission of knives found in defendant's residence was prejudicial constitutional

11 error where the jury could draw no permissible probative inference from evidence, because alleged

12 murder weapon was a knife made by same manufacturer but was commonly available, had a

13 different design, was sold separately and was not owned by defendant).  While the details of the

14 incident were not properly admitted under state law, the vital evidence that the victim reported a

15 sexual assault was admissible under the "fresh complaint" doctrine.  While it is clear this

16 erroneously admitted evidence was detrimental to petitioner, the Court does not find that he has

17 met his heavy burden in demonstrating that it was so prejudicial that it rendered the trial

18 fundamentally unfair.

19       Moreover, as noted by the state court, there was additional evidence that pointed to

20 petitioner's guilt and that the encounter was not consensual.  The other inmate testified that

21 petitioner admitted his guilt and the inmate was aware of details that were not publicly known.

22 Aspects of petitioner's statement to police also cast doubt on his claim that the incident was

23 consensual.  Because petitioner has not met the heavy burden in demonstrating that the admission

24 of the evidence was so prejudicial that it rendered the trial fundamentally unfair, this claim is

25 denied.

26 **II.     FORENSIC ANALYSTS**

27       Petitioner next contends that his right to confrontation was violated when lab supervisors

28 testified regarding certain DNA tests performed by other analysts and that this also violated his

due process rights.

**Background**

Prior to the DNA evidence being presented, petitioner's trial counsel objected to the testimony of analysts Jones and Skinner, who did not perform all the laboratory analysis in question, but were to testify regarding certain analyses performed by other technicians. *Holland*, 2011 WL 4062376, at *13. The prosecutor indicated he was planning on laying the foundation for admission of the laboratory analyses as business records. *Id*. The trial court overruled trial counsel's objection because at that time the California Supreme Court case of *People v. Geier*, 41 Cal. 4th 555 (2007), was controlling and allowed for such evidence to be admitted. *Id*.

The following testimony was heard at trial:
> After the trial court overruled defense counsel's objections in this case, the prosecution called Jocelyn Jones, a supervising criminalist at the Santa Clara County Crime Laboratory, and Elizabeth Skinner, who worked as a criminologist in that laboratory and conducted forensic DNA analysis. The court recognized both witnesses as experts in the field of forensic DNA analysis.
> Supervising criminalist Jones testified about the defendant's DNA profile developed by analyst Hall, who was no longer working for the laboratory at the time of trial. Jones was familiar with Hall's report. Hall's report and accompanying notes were not admitted into evidence. Exhibit 15, a DNA chart comparing defendant's DNA profile generated from his DNA sample with the DNA profiles developed from two cuttings from the victim's underwear, was admitted into evidence.
> Jones testified that the results of the DNA testing of defendant's sample and the underwear cuttings showed a match at all loci tested. She explained the significance of the match in terms of the probability in a particular population. She stated that the random match probability in the Caucasian population was one in 160 quadrillion, in the Hispanic population it was one in "one quintillion, 400 quadrillion," and in the African–American population it was one in 45 quadrillion. The database match probability for the Caucasian population was "one in 26 Trillion."
> In reaching her opinions, Jones relied on Hall's and Skinner's reports and accompanying notes.
> Skinner testified that in 2002 she did forensic DNA analysis on two cuttings from a pair of underwear, which had been found by an officer found under the alleged victim's bed. Skinner confirmed that the report and notes contained in exhibit 16, which was identified at trial but not admitted into evidence, were her work. Skinner confirmed that exhibit 15, the DNA chart, reflected the forensic DNA analysis that she had done on the two underwear cuttings. Skinner also developed the DNA profile for Gweneth Doe's reference blood sample and the DNA chart, exhibit 17, which was admitted into evidence, reflected that DNA profile.
> The two experts' testimony also indicated that a nontestifying

>analyst named Jennifer Zawacki conducted serological work and identified a sperm cell on the underpants near the cuttings analyzed by Skinner. Zawacki's report and accompanying notes were identified as exhibit 19 but the exhibit was not admitted into evidence before the jury. There was testimony that Zawacki's notes indicated that Zawacki observed a sperm cell but her notes did not say whether it was human or animal.

*Holland*, 2011 WL 4062376, at *14-15 (footnotes omitted).

**Discussion**

The jury found petitioner guilty on May 27, 2009. On June 25, 2009, the Supreme Court issued *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009). The Supreme Court found that affidavits reporting results of forensic analysis were testimonial under *Crawford* because they were made under circumstances where an objective witness would reasonably believe they would be used at trial. *Id*. at 310-11. In *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011), the Supreme Court held that "[t]he accused's right is to be confronted with the analyst who made the certification, unless that analyst is unavailable at trial, and the accused had an opportunity, pretrial, to cross-examine that particular scientist." *Id*. at 2710.

Based on these and other cases, the California Court of Appeal found that petitioner's right to confrontation was violated when the expert witnesses testified about forensic testing done by two analysts who did not testify. *Holland*, 2011 WL 4062376, at *18-19. While petitioner's rights were violated, the state court found that the error was harmless:

>A violation of the right to confrontation is subject to harmless-error analysis under *Chapman v. California*, *supra*, 386 U.S. 18, 24 [87 S.Ct. 824]. FN19 (*Coy v. Iowa* (1988) 487 U.S. 1012, 1021 [denial of face to face confrontation]; *Delaware v. Van Arsdall* (1986) 475 U.S. 673, 682 ["denial of the opportunity to cross-examine an adverse witness does not fit within the limited category of constitutional errors that are deemed prejudicial in every case"], 684 [holding that "the constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to Chapman harmless-error analysis"].) "An assessment of harmlessness cannot include consideration of whether the witness' testimony would have been unchanged, or the jury's assessment unaltered, had there been confrontation; such an inquiry would obviously involve pure speculation, and harmlessness must therefore be determined on the basis of the remaining evidence." (*Coy v. Iowa*, *supra*, 487 U.S. at pp. 1021–1022.) "The correct inquiry [for purposes of harmless-error analysis] is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors . . . includ[ing] the importance of the witness' testimony in the

14

prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. Cf. *Harrington*, 395 U.S., at 254, 89 S.Ct., at 1728; *Schneble v. Florida*, 405 U.S., at 432, 92 S.Ct., at 1059." (*Delaware v. Van Arsdall*, *supra*, 475 U.S. at p. 684.)

> FN19. *Bullcoming*, *Melendez–Diaz*, and *Crawford* do not demonstrate that the denial of the constitutional right of confrontation is a structural error that is reversible per se. (*See Bullcoming*, *supra*, 131 S.Ct. at p. 2719, fn. 11 [court stated that it expressed no view on whether the confrontation clause error in that case was harmless]; *Melendez–Diaz*, supra, 129 S.Ct. at p. 2542, fn. 14 [same ]; *Crawford, supra*, 541 U.S. at p. 42, fn. 1 [same].) Rather, in each case, the court remanded the case for further proceedings not inconsistent with its opinion. (*Bullcoming*, *supra*, 131 S.Ct. at p. 2719; *Melendez–Diaz*, *supra*, 129 S.Ct. at p. 2542; *Crawford*, *supra*, 541 U.S. at p. 69.) Unlike the structural error of erroneously depriving a defendant of the right to counsel of choice under the Sixth Amendment, the consequences of which are necessarily unquantifiable and indeterminate and which is not subject to harmless-error analysis (*U.S. v. Gonzalez–Lopez* (2006) 548 U.S. 140, 150–152 [126 S.Ct. 2557] ), the deprivation of the right of confrontation with respect to hearsay evidence is a trial error that occurs "during presentation of the case to the jury" and the effect of such error may "be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." (*Arizona v. Fulminante* (1991) 499 U.S. 279, 308 [111 S.Ct. 1246]; *cf. Crane v. Kentucky* (1986) 476 U.S. 683, 686, 691 [106 S.Ct. 2142] [erroneous exclusion of testimony about the circumstances of the defendant's confession intended to "cas[t] doubt on its validity and its credibility" was subject to harmless error analysis].) This is not a case where the defendant was entirely deprived of the right to confront or cross-examine the witnesses against him, which presumably would be a structural error. (*Cf. U.S. v. Cronic* (1984) 466 U.S. 648, 659 [104 S.Ct. 2039] ["if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable"].) "In those limited instances in which [the U.S. Supreme] Court has found an error 'structural,' [it has] done so because the error defies analysis by harmless-error standards. [Citations.]" (*Hedgpeth v. Pulido* (2008) 555 U.S. 57, 67 [129 S.Ct. 530].)

Any confrontation error with respect to forensic evidence generated by nontestifying analysts was harmless beyond a reasonable doubt in the specific circumstances of this case because the identity of the perpetrator was not an issue at trial and defendant admitted to being in Gweneth's home and engaging in sexual activity. The defense was never that defendant had been misidentified as the assailant. At trial, the closing argument was that there was no forcible oral copulation and the rape-like situation referred to by the alleged

15

> victim involved defendant's act of masturbation: "Gweneth Doe saw something very upsetting. I think she saw my client masturbating in the living room. That's very upsetting. That's the rape-like situation that she saw." Thus, any violation of the right to confront Hall and Zawacki regarding their forensic testing was harmless beyond a reasonable doubt. FN20
> > FN20. By virtue of the same reasoning, any violation of the hearsay rule would be harmless under the *Watson* standard of review. (*People v. Watson*, *supra*, 46 Cal.2d 818, 836.) Consequently, we need not consider whether the evidence of forensic testing performed by and determinations made by the nontestifying analysts was admissible for its truth under the business record exception to the hearsay rule. (*See* Evid. Code, §§ 1200, 1271.) Further, under the facts of this case, it is unnecessary to decide whether a testifying expert's reliance on the truth of extrajudicial testimonial statements in reaching an opinion and the expert's testimony regarding those statements for purposes of evaluating the opinion testimony implicates the confrontation clause.

*Holland*, 2011 WL 4062376, at \*19-20.

Respondent first argues that there was no violation of petitioner's right to confrontation. A year after the California Court of Appeal issued its decision in this case, the Supreme Court decided *Williams v. Illinois*, 132 S. Ct. 2221 (2012). In *Williams*, the Supreme Court held that expert testimony regarding a laboratory report by non-testifying analysts did not violate the Confrontation Clause because the lab report, which was not introduced into evidence, was not testimonial because it (1) had not been "prepared for the primary purpose of accusing a targeted individual . . . or to create evidence for use at trial," and (2) lacked, unlike the lab reports at issue in *Melendez-Diaz* and *Bullcoming*, an affidavit or declaration attesting to the truth of the matters contained in the report. *Id*. at 2243, 2260.

Respondent argues that the facts of this case are similar to *Williams*, thus there was no violation of the right to confrontation. The Court need not address if there was a violation of the Confrontation Clause because even assuming there was a violation, the error was harmless in this case. A Confrontation Clause claim is subject to harmless error analysis. *See Winzer v. Hall*, 494 F.3d 1192, 1201 (9th Cir. 2007) (violation of Confrontation Clause is trial error subject to harmless error analysis in *Brecht v. Abrahamson*, 507 U.S. 619 (1993)). "Under this standard, habeas petitioners . . . are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Brecht*, 507 U.S. at 637. Actual prejudice, in turn, is

16

demonstrated by the petitioner "if the error in question had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Winzer*, 494 F.3d at 1201 (quoting *Brecht*).

Petitioner has failed to demonstrate that the admission of the DNA evidence had a substantial and injurious effect or influence in determining the jury's verdict. As noted by the California Court of Appeal, it was undisputed that petitioner had been in the victim's house and that there had been some type of sexual encounter because he admitted these facts to police well before trial. The testimony of petitioner's cellmate also corroborated this fact. The vital issue at trial was consent, not identity.

In closing argument, petitioner's trial counsel emphasized the DNA evidence by noting that the underwear had mostly petitioner's DNA and only minor amounts from the victim, which suggested that the victim had not been wearing the underwear when petitioner's DNA was deposited onto it. RT at 1018-19. Trial counsel argued that this supported petitioner's cellmate's testimony that petitioner masturbated and then ejaculated on the underwear. *Id*. Trial counsel argued that petitioner was in the house, had called a sex line on the phone, and was masturbating with the victim's clothing when the victim came out of her room and saw him. RT at 1019. She was understandably shocked, and this is what she referred to as a "rape-like situation." RT at 1020. Thus, the DNA evidence was of minor importance in petitioner's trial and, assuming it was erroneously admitted in violation of petitioner's right to confrontation, any error was harmless because the admission of the evidence did not have a substantial and injurious effect or influence in determining the jury's verdict. This claim is denied.[3]

## III. CERTIFICATE OF APPEALABILITY

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. *See* Rules Governing § 2254 Cases, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the

---

[3] For these same reasons, any due process claim is denied. Petitioner cannot show that the admission of the DNA evidence was so prejudicial that it rendered the trial fundamentally unfair.

certificate must indicate which issues satisfy this standard. *Id*. § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, petitioner has made no showing warranting a certificate and so none is granted.

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is **DENIED**. A Certificate of Appealability is **DENIED**. *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

**IT IS SO ORDERED**.

Dated: October 13, 2015

_____
JAMES DONATO
United States District Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| DAVID L. HOLLAND,<br><br>    Plaintiff,<br><br>v.<br><br>HEIDI LACKNER,<br><br>    Defendant. | Case No. 13-cv-02094-JD<br><br>**CERTIFICATE OF SERVICE** |
|---|---|

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 13, 2015, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

David L. Holland ID: AB3615
Sierra Conservation Center
5150 O'Byrnes Ferry Road
Jamestown, CA 95327

Dated: October 13, 2015

Susan Y. Soong
Clerk, United States District Court

By: /s/ Lisa R. Clark
LISA R. CLARK, Deputy Clerk to the
Honorable JAMES DONATO

19